THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AUDREY OSWELL, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil No. 06-5814 (JBS) |
| MORGAN STANLEY DEAN WITTER & CO., INC. | **OPINION** |
| Defendants. | |

APPEARANCES:

Charles A. Ercole, Esq.
Lynn A. Collins, Esq.
KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, LLP
457 Haddonfield Road, Suite 510
Cherry Hill, NJ 08002-6603
      Attorneys for Plaintiff Audrey Oswell

A. Ross Pearlson, Esq.
Clive S. Cummis, Esq.
Jennifer Maria Rosa, Esq.
SILLS, CUMMIS, EPSTEIN & GROSS, P.C.
One Riverfront Plaza
Newark, NJ 07102
      Attorneys for Defendants Morgan Stanley and Venture
      Holdings, Inc.

**SIMANDLE, District Judge:**

This matter is before the Court upon the motion to dismiss of Defendants Morgan Stanley (incorrectly named as "Morgan Stanley Dean Witter & Co.") and Venture Holdings, Inc. (incorrectly named as "Morgan Stanley Gaming Companies Holdings, Inc.").[1] The matter relates to an alleged agreement between plaintiff Audrey Oswell ("Oswell") and Morgan Stanley in which

_____

      [1] Morgan Stanley and Venture Holdings, Inc. will be referred to collectively as "Morgan Stanley."

Morgan Stanley allegedly made certain promises in exchange for Oswell's assistance in the purchase of a parcel of land in Atlantic City, New Jersey and the planned development of that land into a $1 billion hotel resort and casino.  The Complaint contains six counts: (1) breach of contract/breach of implied covenant of good faith and fair dealing (Count One); (2) misappropriation of trade secrets and novel ideas (Count Two); (3) tortious interference with prospective economic advantage (Count Three); (4) unjust enrichment (Count Four); (5) promissory estoppel (Count Five); and (6) fraud (Count Six).  Morgan Stanley's motion seeks dismissal under Fed. R. Civ. P. 12(b)(6) and 9(b).

For the reasons set forth below, Morgan Stanley's motion will be granted in part and denied in part.  The Court will grant Morgan Stanley's motion and dismiss without prejudice Counts Three (tortious interference), Four (unjust enrichment) and Six (fraud).  The Court will deny Morgan Stanley's motion with respect to Counts One (breach of contract), Two (misappropriation of trade secrets) and Five (promissory estoppel).  The Court will also grant Oswell leave to amend her Complaint to cure certain deficiencies in a manner that is consistent with this Court's opinion.[2]

---

[2]  At oral argument, the Court inquired whether, if Count One is held sufficient to state a cause of action, Plaintiff would be willing to answer fairly specific contention

II.   **BACKGROUND**

A.   **The Parties**

Plaintiff Audrey S. Oswell is a 27-year veteran of the casino gaming industry and, until March 27, 2006, was the chief executive officer for Resorts International Hotel ("Resorts") in Atlantic City, New Jersey.  (Complaint ¶ 4.)   Oswell is also the former President and CEO of the Casino Association of New Jersey, serving from January 2005 through May 2006.  (Id.)  According to the Complaint, during this time Oswell "gained a wealth of knowledge and experience in the casino industry, including

_____

interrogatories at an early stage in the case in order to determine what Oswell alleges defined the deal between her and Morgan Stanley.  (Transcript of Oral Argument, 2/15/07, at 27.) The Court received a letter from counsel for Morgan Stanley, dated April 26, 2007, stating that (1) Morgan Stanley served the suggested contention interrogatories, (2) Morgan Stanley is unsatisfied with Oswell's answers (which they characterize as "vague, evasive [and] non-responsive"), and (3) the Court should dismiss Counts One, Two and Six of the Complaint as Oswell has failed to satisfy the pleading requirements of Fed. R. Civ. P. 8(a) and 9(b).  With the Court's permission, counsel for Oswell responded to Morgan Stanley's letter on May 11, 2007.

This Court cannot consider Oswell's answers when considering Morgan Stanley's motion to dismiss unless the Court converts Morgan Stanley's motion from a motion to dismiss into a motion for summary judgment.  See Fed. R. Civ. P. 12(b).  Morgan Stanley has not asked the Court to convert the motion and this Court will not do so.  As such, Oswell's answers to interrogatories (or failure to satisfactorily answer interrogatories) do not impact this Court's ruling on the motion presently before the Court. However, as to Counts One, Two and Six, the Court reminds counsel for Oswell of their obligation to operate within the constraints of Fed. R. Civ. P. 11 and that Oswell should seek to amend her Complaint as to these three counts should amendment be necessary after completing certain due diligence based on Oswell's answers to Morgan Stanley's contention interrogatories.

specific knowledge of the contacts, operations and practices necessary to operate a casino in Atlantic City, New Jersey." (Id.)  Defendants are Morgan Stanley, a financial institution, and its wholly-owned subsidiary Ventura Holdings, Inc.  (Id. at ¶¶ 2-3.)

      **B.**    **The Underlying Facts**

     According to her Complaint, while employed at Resorts, Oswell was introduced to an individual named Sam Sobel ("Sobel"), a principal owner of a 20-acre tract of land in Atlantic City adjacent to the Showboat Casino (the "Property").  (Compl. ¶ 5.) In the course of her discussion with Sobel, Oswell learned that the Property was for sale.  (Id.)  After allegedly determining that her current employer Resorts was not looking to expand its operations or purchase the Property and sensing a potentially lucrative opportunity, Oswell began exploring the possibility of obtaining the Property on her own or in concert with another group of investors.  (Id. at ¶¶ 5-6.)  In furtherance of this plan, in the Summer of 2005, Oswell met with one or two potential financial backers and, in November of 2005, Oswell met with Michael Weinstein to discuss his potential involvement in the food and beverage side of a casino that would be developed on the Property.  (Id. at ¶ 7.)  Weinstein, in turn, introduced Oswell to two other potential financial backers.  (Id.)

4

In December 2005, Oswell was introduced to Michael Garrity ("Garrity") of Morgan Stanley.  (Id.)  Garrity and Oswell discussed her plan for the Property and Oswell inquired into whether Morgan Stanley would be interested in providing financial support.  (Id.)  According to the Complaint, the "discussions and plans were to be kept confidential, so as not to alert other possible investors who might be interested in the Property." (Id.)  During their initial meeting, Garrity indicated to Oswell that Morgan Stanley had engaged in preliminary discussions with Hard Rock International, Inc. ("Hard Rock") to develop a casino in Atlantic City, including talks with Hard Rock and an individual named Tom Scannapieco (a partner in an entity that owned the Property) about purchasing the Property.  (Id. at ¶¶ 8-9.)  According to the Complaint, Garrity stated that Morgan Stanley was "skeptical that Mr. Scannapieco had the authority to consummate the deal" and considered Oswell to have "an inside track on obtaining the Property."  (Id. at ¶ 9.)  Upon hearing this, Oswell then provided Garrity with certain information, including information about the partnership that owned the Property and that it was Sobel –- and not Scannapieco -- who had control over any deal to sell the Property.  (Id.)

In January 2006, Morgan Stanley allegedly indicated that it was committed to working with Oswell to acquire the Property. (Id. at ¶ 10.)  As a result, Oswell ceased looking for financial

backers.  (Id.)  In furtherance of the deal, Oswell obtained tax maps, environmental studies and "relevant access issues" related to the Property after conferring with Mr. Sobel, all of which Morgan Stanley had indicated that it had been unable to obtain during its dealings with Hard Rock.  (Id.)  Oswell also indicated that she could introduce Garrity to Sobel.  (Id.)

As work on acquiring the Property progressed, Garrity told Oswell "on several occasions" that if she left her employment at Resorts and obtained an agreement from Resorts to release her from her non-compete agreement, "the deal would proceed as planned."  (Id. at ¶ 11.)  According to the Complaint, Garrity also "assured [Oswell] that he had full authority from Morgan Stanley to commit to this arrangement."  (Id.)  Ultimately the parties agreed that, rather than Morgan Stanley providing Oswell with the funds necessary to buy the Property, Morgan Stanley would buy the Property and hire Oswell as President and CEO of a new venture that would develop a casino on the site.  (Id. at ¶ 12.)  Oswell would serve as President and CEO "under a fixed term contract" and "would be given a significant ownership stake in the Property."  (Id.)  In addition, in her new role, Oswell "would be given responsibility for overseeing the project during the construction phase and beyond" and be responsible for recruiting potential development partners, assembling a management team, and "setting up the business."  (Id.)  Moreover,

according to Oswell, at the request of Garrity, Oswell provided Garrity with a term sheet for her employment agreement with Morgan Stanley.  (Id.)   The next month, in February of 2006, according to the Complaint, Garrity again stated that if Oswell left her employment with Resorts and obtained a release from her non-compete agreement, Morgan Stanley would proceed with the deal as previously agreed.  (Id. at ¶ 13.)   In March of 2006, Oswell resigned from her position at Resorts and obtained the requested release.  (Id. at ¶ 14.)

Following Oswell's resignation at Resorts, Morgan Stanley refused to honor its alleged commitment to Oswell, claiming that Morgan Stanley was concerned that if it hired Oswell it would be sued by Resorts.  (Id. at ¶ 15.)   Less than two months later, in May of 2006, Morgan Stanley publicly announced that it had closed a deal to purchase the Property from Mr. Sobel for $74 million and planned to build a $1 billion hotel resort and casino on the site.  (Id.)   According to the Complaint, a May 18, 2006 newspaper article named Hard Rock as the likely contender for the operational role of Morgan Stanley's planned casino.  (Id.) According to the Complaint, Oswell was forced to seek employment elsewhere.  (Id. at ¶ 18.)

C.   **Procedural History**

On October 13, 2006, Oswell filed this action in Superior Court of New Jersey - Law Division, Atlantic County.  The

7

Complaint contains six counts: (1) breach of contract/breach of implied covenant of good faith and fair dealing; (2) misappropriation of trade secrets and novel ideas; (3) tortious interference with prospective economic advantage; (4) unjust enrichment; (5) promissory estoppel; and (6) fraud.

On December 4, 2006, Morgan Stanley, citing this Court's jurisdiction over this matter under 28 U.S.C. § 1332, removed this action to this Court.  [Docket Item No. 1.]  On December 22, 2006, Morgan Stanley filed this motion, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and (9)(b). [Docket Item No. 6.]  Oswell filed opposition on January 19, 2007 to which Morgan Stanley timely replied.  [Docket Item Nos. 14, 15.]  This Court heard oral argument on February 15, 2007.  The Court has considered all the submissions of the parties including the April 26, 2007 letter from counsel for Morgan Stanley and the May 11, 2007 response received from counsel for Oswell discussed in footnote two, supra.

Meanwhile, the closely-related case of Resorts Int'l Hotel, Inc. v. Morgan Stanley, et al., Civil No. 07-0105 (RBK), was filed in this Court and was subsequently consolidated with the present case for pretrial purposes by Consent Order filed March 1, 2007.  Resorts was not a party to the present case or to the present motion.

III.   **STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts and must view all allegations in the complaint in the light most favorable to the plaintiff.  See Scheuer, 416 U.S. at 236; Unger v. Nat'l Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991); Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

In the complaint, it is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  When a motion to dismiss is before the court, the question for the court is not whether plaintiff will ultimately prevail; rather, it is whether he or she can prove any set of facts in support of their claims that would entitle them to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of

fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  While the court is required to take all of the allegations of fact as true, the court, however, is "not required to credit bald assertions or legal conclusions alleged in the complaint."  Jones v. Intelli-Check, Inc., 274 F. Supp. 2d 615, 625 (D.N.J. 2003).

## IV.  DISCUSSION

### A.  Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing (Count 1)

In Count I of the Complaint, Oswell claims breach of contract and breach of the implied covenant of good faith and fair dealing.  (Complaint ¶¶ 20-23.)  Specifically, Oswell claims that she had a valid and binding contract with Morgan Stanley which provided that, in exchange for her "information, contacts, and services in brokering the deal" for the Property, Morgan Stanley agreed to "make her a member/partner on the deal and to employ her as President and CEO pursuant to a fixed term agreement with substantial compensation potential."  (Id. at  ¶¶ 20-21.)  Oswell alleges that Morgan Stanley breached this agreement.  (Id. at ¶¶ 22-23.)

In its motion, Morgan Stanley argues that Oswell's breach of contract claim must be dismissed because none of the terms of the supposed contract –- including the contract's term, remuneration,

or the services to be provided -- are alleged in the Complaint.
(Def.'s Br. at 10.)  Instead, the Complaint merely offers vague
and conclusory allegations that purport to be the "deal" between
the parties, absent the relevant material details.  As such,
Oswell's pleadings are too vague and indefinite to create a
binding and enforceable contract.  Moreover, according to Morgan
Stanley, because there is no binding contract between the
parties, Oswell's breach of covenant claim must also be dismissed
because, under New Jersey law, a plaintiff cannot bring a claim
of breach of the covenant of good faith and fair dealing if there
is no binding contract.  See Noye v. Hoffman-La Roche, Inc., 238
N.J. Super. 430, 434 (App. Div. 1990).

Oswell counters that she has adequately plead each and every
element of a claim for breach of contract - existence of a
contract, breach and damages.  (Pl.'s Opp. Br. at 8-9.)
Specifically, Oswell asserts that she has adequately plead the
existence of a contract as she has plead the key terms of her
employment agreement with Morgan Stanley.  This satisfies her
pleading burden according to Oswell because, under the Federal
Rules of Civil Procedure, she is not required to plead facts such
as her specific compensation level or the contract term.

The Court agrees with Oswell and will deny Morgan Stanley's
motion to dismiss Oswell's breach of contract and breach of

covenant claims.[3]  A plaintiff bringing a cause of action for
breach of contract must establish: (1) the existence of a valid
contract with plaintiff and defendant; (2) a breach of the
contract by defendant; (3) performance by the plaintiff of his or
her obligations under the contract; and (4) resulting damages.
See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F.
Supp. 2d 543, 566 (D.N.J. 2003), aff'd, 342 F.3d 191 (3d Cir.
2003.)  A plaintiff cannot meet the burden of establishing these
elements by merely making conclusory allegations.  See In re Nice
Sys. Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).
Moreover, under New Jersey law a contract is only enforceable if
it is "sufficiently definite in its terms that the performance to
be rendered by each party can be reasonably ascertained."
Savarese v. Pyrene Mfg. Co., 9 N.J. 595, 599 (1952); Weichert Co.
Realtors v. Ryan, 128 N.J. 427, 435 (1992)(courts generally hold
that an agreement is unenforceable "[w]here parties do not agree
to one or more essential terms.")

     The key issue here is whether Oswell has properly plead the
first essential element of a breach of contract claim - the
existence of a valid contract between Oswell and Morgan Stanley.

---

     [3] As a preliminary matter, when exercising diversity
jurisdiction, a district court must apply the law of the state
whose law governs the action.  See Jaasma v. Shell Oil Co., 412
F.3d 501, 507 (3d Cir. 2005).  New Jersey law applies here
because the events at issue - including the purported
negotiations, alleged discussions and the purchase of the
Property - took place in Atlantic City, New Jersey.

The Court concludes that Oswell has done so.  Rule 8(a)(2), Fed.
R. Civ. P. establishes a lenient pleading standard, requiring
only that a plaintiff provide a "short and plain statement of the
claim showing that the pleader is entitled to relief."  In
interpreting Rule 8, the Supreme Court and the Third Circuit
Court of Appeals have held that Rule 8(a) does not demand fact
pleading, only that the complaint "provide fair notice of what
the plaintiff's claim is and the grounds upon which it rests."
Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002); In re
Tower Air, Inc,, 416 F.3d 229 (3d Cir. 2005)("[A] plaintiff will
not be thrown out of court on a Rule 12(b)(6) motion for lack of
detailed facts."); Weston v. Pennsylvania, 251 F.3d 420, 428-30
(3d Cir. 2001).

     Under the lenient standard set by Rule 8(a), it is clear
that dismissal under Fed. R. Civ. P. 12(b)(6) would be
inappropriate.  Oswell has plead that there was an agreement
between the parties and that the agreement set forth the key
terms of her mutual understanding with Morgan Stanley, including
Oswell's role in the new venture (she would serve as the
President and CEO of the new venture), certain aspects of
Oswell's compensation (Oswell would work under "a fixed term
contract" and be given an ownership stake), and the basics of
Oswell's duties and responsibilities (Oswell would be responsible
for overseeing construction, recruiting potential development

partners and hiring a management team).  (Compl. ¶ 12, 21.)
Indeed, Oswell even asserts that she circulated a term sheet
regarding the terms of her employment.  (<u>Id.</u>)  Such allegations,
taken in the light most favorable to Oswell are sufficient to
give Morgan Stanley fair notice of the claims against them and
are a far cry from simply pleading "[l]egal conclusions made in
the guise of factual allegations . . ." as suggested by Morgan
Stanley in its motion papers.  <u>In re Nice Sys., Ltd Sec. Litig.</u>,
135 F. Supp. 2d at 565.  Furthermore, at this stage of the
proceedings, this Court cannot say that Oswell cannot prove any
set of facts in support of her breach of contract claim that
would entitle her to relief.  <u>See</u> <u>Hishon</u>, 467 U.S. at 73.[4]

---

[4]  Morgan Stanley's argument that Oswell's claim must be
dismissed because Oswell has not plead the essential terms of the
contract is unpersuasive.  Under the Federal Rules of Civil
Procedure, at this stage in the litigation Oswell is not required
to plead her specific compensation level to have properly plead
the existence of a contract.  <u>See</u> <u>In re Tower Air, Inc.</u>, 416 F.3d
229 (3d Cir. 2005)("[A] plaintiff will not be thrown out of court
on a Rule 12(b)(6) motion for lack of detailed facts."); <u>see</u> <u>also</u>
<u>Rehabcare Group East, Inc. v. Trenton Convalescent Operating Co.</u>,
2006 U.S. Dist. LEXIS 67376 at *2 (D.N.J. Sep. 20, 2006)("[T]he
Federal Rules do not require the plaintiff to include the
contract [with the complaint], or allege specific provisions . .
., or specify damages that occurred."   Indeed, the Complaint
need only provide fair notice of what the plaintiff's claim is
and the ground upon which it rests.  <u>See</u> <u>Myers v. MedQuist, Inc.</u>,
2006 U.S. Dist. LEXIS 91904 (D.N.J. Dec. 20, 2006).

The Court is mindful however that, at a future date, Morgan
Stanley may move for summary judgment and make essentially the
same argument presented here.  The summary judgment stage -- when
the record is more fully developed (such as by paying particular
attention to issues surrounding the term sheet circulated by
Oswell) -- is the proper stage for this Court to examine whether
the contract is unenforceable "for vagueness when its essential

With respect to Oswell's claim of breach of covenant, again, Morgan Stanley's motion must be denied.  Morgan Stanley's argument that Oswell's breach of covenant claim should also be dismissed is dependent upon on this Court finding that there is no valid breach of contract claim.  This Court will make no such conclusion.[5]

## B.   <u>Misappropriation of Trade Secrets and Novel Ideas (Count 2)</u>

In Count 2 of the Complaint, Oswell claims that Morgan Stanley misappropriated her trade secrets and novel ideas for its own activities. (Complaint ¶¶ 26-28.)  According to Oswell, she conveyed to Morgan Stanley "certain confidential business ideas and trade secrets" relating to her plans for developing the Property as a casino.  These ideas, according to the Complaint, were trade secrets, conveyed in confidence and constituted "business information not generally known to the public" which gave Morgan Stanley an advantage over competitors.  (<u>Id.</u>)

--------

terms are too indefinite to allow a court to determine with reasonable certainty what each party has promised to do." <u>Baer v. Chase</u>, 392 F.3d 609, 619 (3d Cir. 2004).  Indeed, at that time, this Court may examine if the essential terms of employment - such as compensation and duration - have been agreed upon.  <u>Id.</u>

[5] Finally, the Court notes the issue, raised at oral argument, of whether Oswell is alleging that the term sheet she sent to Garrity (at his request) in January of 2006 constitutes the contract between the parties.  (Compl. ¶ 12.)  At oral argument, counsel for Oswell reiterated that Oswell was not alleging that the term sheet constitutes the agreement between the parties.

Morgan Stanley argues that Oswell's allegation of misappropriation of trade secrets must be dismissed because Oswell has not properly plead that the information she claims to have provided to Morgan Stanley were trade secrets or novel ideas.  (Def.'s Br. at 17-18.)   To the contrary, according to Morgan Stanley, none of the information provided by Oswell belonged to her or can be considered a trade secret because Oswell fails to allege that (1) the existence and ownership of the Property was not common knowledge in the relevant business community and was not readily identifiable through public records and (2) she took any steps to ensure the secrecy of such information.  Oswell counters by arguing that, under New Jersey law, a claim of misappropriation of trade secrets does not require specific pleading of the precise information that constitutes the trade secret in order to survive a motion to dismiss.  However, even if she was required to plead with specificity, the Complaint does allege that the information Oswell provided to Morgan Stanley was confidential, "not generally known to the public," that Morgan Stanley and Hard Rock had been unable to obtain this information on their own prior to working with Oswell (including Morgan Stanley's dealings with Scannapieco) and that the information was conveyed to Morgan Stanley "in confidence" and "with the understanding that [it] be

16

used solely for the purpose of the agreed upon deal." (Pl.'s Opp. Br. at 18-19 citing Compl. ¶¶ 8, 9, 26, 28.)

### 1.   Misappropriation of Trade Secrets

Because Oswell has adequately plead a cause of action for misappropriation of trade secrets, Morgan Stanley's motion will be denied.  To bring a successful claim of misappropriation of trade secrets under New Jersey law, a plaintiff must establish that: (1) a trade secret exists; (2) that plaintiff took reasonable precautions to maintain the secrecy of the information; and (3) the defendant used the secret information to the detriment of the plaintiff.  See Rycoline Products, Inc. v. Walsh, 334 N.J. Super. 62, 71 (App. Div. 2000).  Under New Jersey law, however, a claim of misappropriation of trade secrets does not require specific pleading of the precise information that constitutes the trade secret in order to survive a motion to dismiss.  Specifically:

> [U]nless there are heightened pleading requirements as to a particular cause of action, the Federal Rules of Civil Procedure do not require a plaintiff to plead all relevant facts in detail, In re Tower Air, Inc., 416 F.3d at 237, and generally do not require a plaintiff to provide specific information about trade secrets at this stage of the litigation.

Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., 2006 U.S. Dist. LEXIS 70834, * 24-25 (D.N.J. Sept. 29, 2006).

Oswell has satisfied this minimal standard of a trade secret claim.  The Complaint alleges that the information she conveyed

17

to Morgan Stanley (i.e., information about the Property, its
ownership, etc.) was a trade secret and that it was being
conveyed to Morgan Stanley in confidence.[6]

### 2. Misappropriations of Novel Ideas

The crux of Morgan Stanley's argument here is that the idea
of building a casino on property in Atlantic City was not "novel"
and therefore, Oswell's claim should be dismissed.  (Def.'s Br.
at 17.)  Indeed, The Third Circuit has held that:

> When "a person communicated a novel idea to another with
> the intention that the latter may use the idea and
> compensate him for such use, the other party is liable
> for such use and must pay compensation if . . . (1) the
> idea was novel; (2) it was made in confidence; and (3) it
> was adopted and made use of [by defendant] in connection
> with his activities."

Baer, 392 F.3d at 627 (quoting Flemming v. Ronson Corp., 107 N.J.
Super. 311 (Law Div. 1969)).  An idea may lose its novelty if it
was "in the domain of public knowledge" prior to its use by the
defendant.  Baer, 392 F.3d at 628.

Again, similar to the Court's analysis with respect to
Oswell's trade secret claim, Morgan Stanley may not rest its
argument at this stage in the litigation on the fact that the
ideas conveyed to Morgan Stanley lost their novelty because they
entered "the domain of public knowledge" prior to their use by

---

[6] At the summary judgment phase, Morgan Stanley will have
the opportunity to argue that no genuine issue of material fact
exists regarding whether the information was publicly known or
readily available and therefore not protectible as a trade
secret.

Morgan Stanley.  See Baer, 392 F.3d at 628.  At this stage in the litigation, the Court must take all of Oswell's allegations as true and Oswell alleges that the idea was novel.  As such, Morgan Stanley's motion to dismiss Oswell's misappropriation of trade secrets and novel ideas will be denied.

### C.   Tortious Interference with Prospective Economic Advantage (Count 3)

In Count 3, Oswell alleges that she entered into an agreement with Morgan Stanley and had a reasonable expectation of economic advantage with respect to the development of the Property as a casino.  (Compl. ¶ 33.)  Oswell claims that this expectation was lost as a result of Morgan Stanley's tortious and malicious interference with her pursuit of that deal.  (Id.)

Morgan Stanley argues that Oswell's tortious interference claim must be dismissed because a party cannot interfere with its own contract and Oswell fails to allege that Morgan Stanley interfered with any contract between Oswell and a third party.  (Def.'s Br. at 20.)  Morgan Stanley points to the Complaint, which states that Oswell "entered into an agreement with [Morgan Stanley] with respect to her plans for the development of the Property for use as a casino" and that she "had a reasonable expectation of economic advantage arising from the development" that was lost as a result of Morgan Stanley's alleged interference with that deal.  (Compl. ¶¶ 32-33.)  Because New Jersey law does not permit Oswell to "reconfigure her breach of

19

contract claim into an additional claim for tortious
interference," Morgan Stanley claims it cannot be held liable for
tortiously interfering with their own alleged "deal" with Oswell.
(Def.'s Br. at 22.)

Oswell counters that Morgan Stanley confuses the elements of
a cause of action for tortious interference with prospective
economic advantage with the elements of a cause of action for
tortious interference with contract.  Here, according to Oswell,
she does not allege a claim of tortious interference with
contract but tortious interference with prospective economic
advantage (i.e., that Oswell had been pursuing an opportunity to
purchase the Property, she believed that consummating the deal
would be a potentially lucrative opportunity, she looked for
financial backers, and expected to obtain an economic advantage
in acquiring the Property.)  (Compl. ¶¶ 5-7, 33.)  Oswell argues
that, rather than compete against her, Morgan Stanley "took
action to impede and interfere with her ability to obtain the
Property, through fraudulent means and misrepresentations that
Morgan Stanley intended to be committed to her in an agreement."
(Pl.'s Opp. Br. at 22.)

A claim for tortious interference with prospective economic
relationship requires a plaintiff to plead (1) a prospective
economic relationship; (2) interference with the prospective
relationship that was intentional and done with malice; (3) the

interference caused the loss of prospective gain; and (4) damages.  See Bocobo v. Radiology Consultants of S. Jersey, P.A., 2005 U.S. Dist. LEXIS 29321, at *35 (D.N.J. Nov. 21, 2005).  The Supreme Court of New Jersey has held that "[i]t is 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the [contractual] relationship."  Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 750 (1989).  Indeed, a tortious interference claim is not meant to upset the rules governing contracts.  Id.; see also Fiorigli v. City of Atlantic City, 996 F. Supp. 379, 392 (D.N.J. 1998)("[O]ne cannot interfere with one's own contractual or economic relationship.")

Morgan Stanley's motion to dismiss Oswell's tortious interference claim will be granted and Oswell's claim will be dismissed without prejudice.  The Court recognizes that Oswell's claim is for tortious interference with prospective economic advantage and is separate and distinct from any contract claim.  However, Oswell has not plead this claim with sufficient clarity for this Court to determine the prospective economic advantage of which Oswell was deprived.  Thus, the Court will grant Oswell leave to amend her Complaint in order to replead this cause of action to include additional facts to clarify what prospective

economic advantage Oswell claims she lost due to Morgan Stanley's alleged actions, as discussed above.

In addition, if Oswell wishes to pursue this claim, she must amend her Complaint to eliminate the discrepancies and confusion related to Oswell's wording of Paragraph 32 and 33 of the Complaint.  Specifically, Paragraph 32 of the Complaint states that Oswell and Morgan Stanley entered into "an agreement" with respect to plans for the Property.  In Paragraph 33, Oswell alleges that her reasonable expectation of economic advantage was lost as a result of Morgan Stanley's tortious interference with her pursuit "of that deal."  Reading these two paragraphs together, the Court concludes that Oswell is alleging that Morgan Stanley tortiously interfered with the contract between it and Oswell.  As discussed above, under New Jersey law, one cannot interfere with one's own contractual relationship.  Thus, as presently plead, Oswell's tortious interference with economic advantage claim cannot proceed and Oswell must replead this claim in order to eliminate this error.  Accordingly, Count 3 is dismissed without prejudice and this Court grants Plaintiff leave to amend its Complaint in this manner.

### D.   Unjust Enrichment (Count 4)

In Count 4, Oswell claims that Morgan Stanley "received a benefit from [Oswell] in the form of services, information, plans and contacts with respect to a proposed deal in developing the

Property," for which Oswell expected remuneration at the time she
conferred such benefits.  (Compl. ¶¶ 37-38.)  Oswell alleges that
Morgan Stanley has been unjustly enriched by retaining these
benefits without payment.  (Id. at ¶ 39.)

Morgan Stanley argues that Oswell's claim fails for two
reasons.  First, Oswell cannot establish a cause of action for
unjust enrichment because Oswell does not allege that she
expected any form of immediate compensation based on her
preliminary meetings and conversations with Morgan Stanley.
(Def.'s Br. at 24.)  Second, according to Morgan Stanley, Oswell
did not allege that she expected payment for providing the
alleged information and services at the time she provided them.
(Id.)  Oswell argues that she has properly plead this claim as
she alleges in her Complaint that she expected to receive
compensation for the services provided on behalf of Morgan
Stanley at the time they were rendered under the terms of a
contract between the parties.  (Pl.'s Opp. Br. at 24.)  Oswell
argues that she has simply plead in the alternative (with
Oswell's breach of contract claim), as she is permitted to do
under the Federal Rules.

To establish a claim for unjust enrichment, "a plaintiff
must show that defendant received a benefit and that retention of
that benefit without payment would be unjust."  VRG Corp. v. GKN
Realty Corp., 135 N.J. 539, 554 (1994); Cameco, Inc. v. Gedicke,

23

299 N.J. Super. 203, 218 (App. Div. 1997).  Recovery for unjust
enrichment, however, is an equitable remedy that is only
available when there is no express contract providing for
remuneration.  See Caputo v. Nice-Pak Products, 300 N.J. Super.
498, 507 (App. Div. 1997).  It is here where Oswell's pleading is
deficient as Oswell appears to seek relief for unjust enrichment
while also incorporating her breach of contract claim.
Specifically, in Paragraph 36 of the Complaint, Oswell
"incorporated [the preceding allegations of the Complaint] as if
set forth at length herein."  (Compl. ¶ 36.)  One such preceding
allegation was Oswell's claim that (1) a contract existed between
Oswell and Morgan Stanley and (2) Morgan Stanley breached that
contract.  This was improper because an unjust enrichment claim
must be independent of a breach of contract claim and a Plaintiff
may not bring an unjust enrichment claim while also pleading the
existence of a contract.  Thus, this Court will grant Morgan
Stanley's motion to dismiss Oswell's unjust enrichment claim.
The Court will dismiss this claim and grant Oswell leave to amend
her Complaint to make her   unjust enrichment claim independent
of her contract claims.

**E.   Promissory Estoppel (Count 5)**

Oswell alleges that Morgan Stanley made certain "clear and
definite commitments and promises" to her, upon which she relied
and that Morgan Stanley failed to honor.  (Compl. ¶ 42-45.)

Among the commitments were that Morgan Stanley would make Oswell a member/partner on the deal, would employ her as President/CEO and would give her certain management control if she would provide information about the Property, resign her employment with Resorts and obtain a release from her non-compete agreement. (Id.)

Morgan Stanley argues that Oswell has failed to allege a single "clear and definite" promise made to her by Morgan Stanley or plead sufficient facts that she detrimentally relied on Morgan Stanley's promise.  (Def.'s Br. at 27.)  Assertions of "vague allegations regarding a 'fixed term' agreement with potential for 'substantial compensation' that are part of an unspecified 'deal'" fail to provide any details regarding these alleged promises, according to Morgan Stanley.  Oswell argues that she has alleged more than a "vague promise of potential future employment," having plead that she was promised employment with definite terms (including a description of her job title, duties, term and compensation) and that this promise was breached. Oswell also argues that, after Oswell's meeting with Sobel in which the terms of the purchase of the Property were discussed, Oswell reasonably relied on Morgan Stanley's promises, believed that the sale would be consummated with Sobel, and resigned her position at Resorts.

The Court holds that Oswell's claim for promissory estoppel will be allowed to proceed because Oswell has plead all of the requisite elements of a claim for promissory estoppel.  Most significantly, Oswell alleges a clear and definite promise between Oswell and Morgan Stanley - namely that in exchange for her assistance and information leading to purchase of the Property, Oswell would be installed as CEO and President of a new venture that would develop the Property and receive an equity stake in the deal.  Whether this claim is devoid of a basis in admissible evidence may be tested upon summary judgment, not upon this Rule 12(b)(6) motion.  Thus, Oswell has properly plead a claim of promissory estoppel.

### F.   **Fraud (Count 6)**

In Count 6, Oswell alleges that Morgan Stanley represented that it intended to "do a business deal with her" (relating to the casino development project) and employ her as President and CEO of a venture to develop a casino once the deal to purchase the Property was completed.  Moreover, Morgan Stanley also represented that it would go forward with the deal if Oswell obtained a release from her non-compete agreement with Resorts. Such representations, according to Oswell, were false and were relied upon by Oswell to her detriment.  (Compl. ¶¶ 50-51.)

Morgan Stanley first argues that Oswell's fraud claim should be dismissed because her vague allegations fail to satisfy the

heightened pleading requirements for fraud under Fed. R. Civ. P. 9(b).  The allegations in the Complaint allegedly fall short of the specificity requirement in that Oswell has not alleged "the identity of the person who made the alleged misrepresentation, along with the date, place and time the misrepresentation was made.  Folkman v. Roster Fin. LLC, U.S. Dist. LEXIS 18117, at *15 (2004).  Second, Morgan Stanley argues that the fraud claim fails because, at best, her allegations relate to alleged promises to do something in the future (i.e., to employ Oswell if, and only if, the purchase of the Property closed and the development of the Property went forward.)  (Def.'s Br. at 31.)  Oswell argues, to the contrary, that she has plead each and every element of a fraud claim under New Jersey law.  According to Oswell, even if she is required to plead the "who, what and when" of a fraud –- which Oswell disputes – her allegations that Garrity made a series of representations to her satisfy this requirement.  As such, Oswell argues that even under the legal standards as articulated by Morgan Stanley, Oswell has adequately plead her fraud claim.

A plaintiff bringing a fraud claim under New Jersey law in federal court must overcome two hurdles.  First, under Fed. R. Civ. P. 9(b), the plaintiff must plead "the circumstances constituting fraud or mistake . . . with particularity."  Fed. R. Civ. P. 9(b).  Under the heightened standard of Rule 9(b), a

plaintiff need not "plead the 'date, place or time' of the fraud, so long as plaintiff uses an alternative means of injecting precision and some measure of substantiation into their allegations." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (quoting Seville Indus. Machinery Corp. v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984)). Instead, the Rule 9(b) standard can be met if the plaintiff adequately pleads the subject and nature of each misrepresentation. See Seville Indus. Machinery Corp., 742 F.2d at 791.[7]   Second, the plaintiff must plead all of the five essential elements of a New Jersey fraud claim - (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other party rely on it; (4) reasonable reliance thereon by the other party; and (5) resulting damages. See Gennairi v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).

### 1.    Heightened Pleading Requirement of Rule 9(b)

---

[7]   In Seville, the Third Circuit held that plaintiffs satisfied Rule 9(b) by incorporating into plaintiff's complaint a specific list of machine parts involved in the fraud, as well as describing the transactions that involved these parts.  See id. The court concluded that the heightened pleading requirement was met because the complaint "sets forth [i] the nature of the alleged misrepresentations, and [ii] while it does not describe the precise word used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation." Id.

Here, Oswell has satisfied the heightened pleading requirements of Rule 9(b).  Oswell need not plead the "date, place or time" of each alleged misrepresentation or each alleged fraudulent act performed to satisfy the requirements under Rule 9(b).  Indeed, "focusing exclusively on Rule 9(b)'s 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated' by the Federal Rules of Civil Procedure." Christidis v. First Penn. Mtg. Trust, 717 F.2d 96, 100 (3d Cir. 1984)(quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969)).  All that is required is that Oswell plead the "circumstances" of the alleged fraud with enough specificity to "place defendants on notice of the precise misconduct with which they are charged."  Seville Indus. Machinery Corp., 742 F.2d at 791.

In the Complaint, Oswell provided the required circumstances surrounding her allegations of fraud.  To be sure, Oswell has provided Morgan Stanley with notice of numerous examples of specific misrepresentations, including:

- In December of 2005, Garrity told Oswell that if she obtained an agreement from Resorts releasing her from her non-competition agreement, the deal would proceed as planned.  Garrity repeated this offer in February of 2006. (Compl. ¶ 11);

- In January of 2006, Morgan Stanley told Oswell it would commit to working with Oswell on acquiring the Property, rather than working with Hard Rock (Id. ¶ 10);

29

- Also in January of 2006, Morgan Stanley represented that they would employ Oswell in an executive capacity, under a "fixed term agreement," and that Oswell would be given responsibility to oversee the project including overseeing construction, recruiting business partners and training management.  This employment relationship was outlined in a term sheet exchanged between the parties. (<u>Id</u>. ¶ 12).

### 2.  Properly Plead All Elements of a Fraud Claim

Oswell has failed, however, to plead all essential elements of a fraud claim under New Jersey law.  Specifically, Oswell has failed to adequately plead that Morgan Stanley or Garrity made a material misrepresentation of a presently existing fact.  In general, an alleged fraudulent misrepresentation "must relate to some past or present existing fact and cannot ordinarily be predicated upon matters <u>in futuro</u>."  <u>Ocean Cape Hotel Corp. v. Masefield Corp.</u>, 62 N.J. Super. 369, 380 (App. Div. 1960).  "Statements as to future or contingent events . . . or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong."  <u>Alexander v. CIGNA Corp.</u>, 991 F. Supp. 427, 435 (D.N.J. 1998).  An alleged representation to induce a party into action that is a promise to perform an action in the future is not a representation in the legal sense.  <u>Anderson v. Modica</u>, 4 N.J. 383, 391-92 (1950).  "Such failure to perform is merely a breach of contract which may give rise to an action in contract."  <u>Id</u>.

Oswell's Complaint fails to set forth any allegations sufficient to show that Morgan Stanley did not intend to fulfill

any promises made at the time they were allegedly made.  Rather, Oswell's claims contain statements by Garrity of future intentions based on future events.  For example, in Paragraph 48 of the Complaint, Oswell alleges that "Morgan Stanley represented to Ms. Oswell . . . that it intended to make her a member/partner on the deal and to employ her as President and CEO . . . once the deal was completed."  (Compl. ¶ 48.)  As such, this Court will grant Morgan Stanley's motion to dismiss and dismiss Oswell's fraud claim without prejudice.  Again, this Court will grant Oswell leave to amend the Complaint to clarify what presently existing fact Morgan Stanley or Garrity knowingly misrepresented to Oswell to Oswell's detriment.

## IV.   LEAVE TO SERVE INTERROGATORIES

At oral argument, the Court mentioned that it would likely be in the interest of judicial economy for Morgan Stanley, at an early stage in this litigation, to serve upon Plaintiff contention interrogatories seeking to discover the factual basis for the allegations raised in the Complaint.  Such interrogatories can and should be directed towards specific allegations in the pleadings, including vague and general allegations, require Oswell to make certain contentions and, if so, to state the facts supporting the contention.  See Fed. R. Civ. P. 33.  Because interrogatories should not be served with initial pleadings and generally must be held until counsel have

31

attended their Rule 26(f) meeting, <u>see</u> Robert E. Bartkus, <u>N.J.</u>
<u>Federal Civil Procedure</u> ¶ 12-5:3 at 316 (1999), this Court will
grant Morgan Stanley leave to file contention interrogatories on
Oswell if Morgan Stanley chooses to do so.  See Fed. R. Civ. P.
33(a)("Without leave of court or written stipulation,
interrogatories may not be served before the time specified in
Rule 26(d).")  All such contention interrogatories shall be
served in a timely manner that is consistent with this Court's
Order and answered according to Rule 33(c), Fed. R. Civ. P.

**V.   CONCLUSION**

   For the reasons set forth in this Opinion, this Court will
grant in part and deny in part Morgan Stanley's motion to
dismiss.  The Court will grant Morgan Stanley's motion and
dismiss Oswell's Complaint without prejudice with respect to
Counts 3, 4 and 6 and grant Oswell leave to amend her Complaint
in a manner that is consistent with this Court's Opinion.  The
Court will deny Morgan Stanley's motion with respect to Counts 1,
2 and 5.

   The accompanying Order is entered.


**June 18, 2007**                         **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    United States District Judge


32