THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AUDREY OSWELL,<br>        Plaintiff,<br>v.<br>MORGAN STANLEY DEAN WITTER & CO., INC., et al.,<br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 06-5814 (JBS) |
| RESORTS INTERNATIONAL HOTEL, INC.<br>        Plaintiff,<br>v.<br>MORGAN STANLEY DEAN WITTER & CO., INC., et al.,<br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 07-105 (JBS)<br><br>**OPINION** |

APPEARANCES:

Herbert J. Stern, Esq.
Joel M. Silverstein, Esq.
Michael Dinger, Esq.
STERN & KILCULLEN, LLC
75 Livingston Avenue
Roseland, NJ 07068
    Attorneys for Resorts International Hotel, Inc.

A. Ross Pearlson, Esq.
Jennifer M. Rosa, Esq.
Clive Cummis, Esq,
SILLS, CUMMIS, EPSTEIN & GROSS, P.C.
One Riverfront Plaza
Newark, NJ 07102
    -and-
Robert B. Fiske, Jr. Esq.
Brian Weinstein, Esq.
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
    Attorneys for Defendants Morgan Stanley and Venture
    Holdings, Inc.

**SIMANDLE, District Judge:**

While serving as CEO of Resorts International Hotel, Inc. ("Resorts") running its casino hotel in Atlantic City, New Jersey, Audrey Oswell was in active secret negotiations with Morgan Stanley Dean Witter ("Morgan Stanley") to develop and construct a competing casino on a vacant parcel of land nearby for her own benefit. Resorts has alleged that Oswell failed to disclose her double-dealing, or this opportunity to develop the land, to her own employer. Meanwhile, discovery in this case has unearthed an email written by Oswell to another Resorts officer, Nicholas Ribis, which disclosed, in rather abbreviated form, that an opportunity to acquire the property existed, as well as Ribis' reply that Resorts would not be interested. Morgan Stanley asserts that Ribis' reply flies in the face of Resorts' allegations that Morgan Stanley interfered with Resorts' opportunity to develop the property itself, as discussed below. This matter is before the Court on (1) the motion for sanctions under Fed. R. Civ. P. 11 by Defendant Morgan Stanley and (2) the cross-motion for sanctions by Plaintiff Resorts. For the reasons expressed below, the Court will deny both Morgan Stanley's motion for sanctions and Resorts' cross-motion.

## I. BACKGROUND

### A. Facts

As the parties to this case are familiar with the underlying facts of Oswell v. Morgan Stanley et al. (Civ. No. 06-5814), the Court will include only a brief summary of the relevant facts as they relate specifically to Resorts International Hotel, Inc. v. Morgan Stanley et al. (Civ. No. 07-105). On January 4, 2007, Resorts filed suit against Morgan Stanley alleging five claims: (1) restitution of benefit obtained by Morgan Stanley from active participation in Audrey Oswell's breaches of her fiduciary duty; (2) aiding and abetting Oswell's breaches of her fiduciary duty; (3) unjust enrichment; (4) tortious interference with contractual relations; and (5) tortious interference with Resorts' prospective economic advantage from the "Opportunity" (which is defined in the Complaint as "a potentially lucrative opportunity to develop the Property as a casino") (Compl. ¶ 12). Resorts' complaint seeks a declaration that Morgan Stanley holds certain property (a 20-acre plot adjacent to the Showboat Casino in Atlantic City, New Jersey defined as the "Property," Compl. ¶ 12) in constructive trust for Resorts.[1] The Complaint, however, also seeks disgorgement of all gains from Morgan Stanley's purchase of

---

[1] Resorts' demand for a constructive trust is at the center of Morgan Stanley's motion for sanctions.

3

the Property, compensatory and punitive damages, interest and costs and other relief. Resorts claims that Oswell failed to disclose to Resorts either the Opportunity or any of the dealings or communications between Oswell and Morgan Stanley regarding the Property. (Compl. ¶ 27.) Moreover, Resorts claims that, had Morgan Stanley not interfered with Oswell's employment agreement and Oswell would have presented the opportunity to purchase the Property to the attention of Resorts, "there is a reasonable probability that Resorts would have been interested in purchasing the Property and would have substantially profited from the Opportunity and Property. (Compl. ¶¶ 50, 56.)

Central to this motion is a February 13, 2006 email from Oswell to Nicholas L. Ribis, then Vice Chairman and Executive Vice President of Resorts which purports to describe Oswell's presentation to Resorts of the opportunity to purchase the Property at issue (the "Oswell-Ribis Email"). Specifically, Oswell wrote to Ribis:

> "I received a call regarding a 16 acre parcel of land North of Showboat. The land is for sale in the price range of $50 to $75 million. Any interest?"

Later that day, Mr. Ribis responded:

> "No interest."

(Pearlson Decl. Ex. A). Further, Oswell interrogatory responses in <u>Oswell v. Morgan Stanley</u> (Civ. 06-5814) bolster Morgan Stanley's position that Oswell presented the opportunity to

4

purchase the Property to Resorts and it was rejected. One response states that Oswell "had communications with members of Resorts' management during 2004, 2005 and 2006 which indicated that Resorts was not interested in purchasing the Property." (Pearlson Reply Dec., Ex. C. (Oswell Response to Interrogatory 2.)) Oswell also describes mentioning to Mr. Ribis in the Winter/Spring of 2004 that the Property was available for purchase, but Mr. Ribis indicated that Resorts was not interested, commenting that Resorts already owned eleven acres of undeveloped land in Atlantic City and was not interested in acquiring more. (Id.) Oswell also describes a similar conversation with Thomas J. Barrack, Jr., Director and Treasurer of Resorts. Oswell goes on to describe a second and third meeting with Mr. Ribis (on or around July 8, 2005 and then on November 10, 2005, respectively) where she asked about whether Resorts would be interested in acquiring the Property. Both times, Mr. Ribis indicated that Resorts had no interest in the Property. (Id.) Finally, Oswell produced a handwritten note from a notebook relating to certain of the conversations described above, including one from July 8, 2005 which states:

> N.R. [Nick Ribis] North beach land $55-75 M, 21 acres
> N. Showboat.
>
> Per Nick - Tom [Barrack] has no interest.

(Pearlson Reply Dec., Ex. D.)

B. **Procedural History**

On March 30, 2007, in response to a third-party subpoena, Oswell's attorneys produced the Oswell-Ribis Email to Morgan Stanley. On April 2, 2007, Morgan Stanley forwarded the Oswell-Ribis Email to Resorts and requested that Resorts withdraw the allegations contained in Resorts' Complaint that were contradicted by the Oswell-Ribis Email (namely, that Oswell never presented the opportunity to purchase the Property to Resorts in breach of her fiduciary duty). (Pearlson Aff. ¶ 5, Ex. D.) Having received no response, on April 10, 2007, Morgan Stanley again forwarded the Oswell-Ribis Email to Resorts and requested that Resorts' allegations now allegedly shown to be false be withdrawn. (Pearlson Aff. ¶ 7, Ex. E.)

On April 24, 2007, Morgan Stanley served this motion on Resorts in accordance with the 21-day safe harbor provision of Rule 11(c), Fed. R. Civ. P. (Id.) Morgan Stanley received no response and on May 21, 2007, filed their motion for sanctions, seeking two forms of relief under Rule 11. First and most importantly, Morgan Stanley requests that the Court strike the claims that "rely directly on these false allegations," namely the request for a constructive trust. At oral argument, counsel for Morgan Stanley focused on this remedy, arguing that Resorts' only purpose for seeking a constructive trust was to put a cloud over title to the Property - holding up the development of the

property and the financing associated with such development. Second, Morgan Stanley requests that the Court order Resorts to pay (a) attorneys' fees and expenses incurred in making its motion for sanctions and (b) other fees and expenses incurred by Morgan Stanley during the course of this litigation that are associated with Resorts' failure to withdraw the allegations contained in paragraphs 38, 41, 42, 46, 47 (i.e., that there is a reasonable probability that Resorts would have substantially profited from the Property and the opportunity to develop a casino on the Property were it not for Morgan Stanley's interference).

On June 1, 2007, Plaintiff Resorts filed opposition to Morgan Stanley's motion and cross-moved for sanctions. Resorts argues essentially that Morgan Stanley's Rule 11 motion is frivolous because Morgan Stanley's interpretation of the Oswell-Ribis Email is flawed in light of the patently misleading character of what Oswell chose to disclose to Ribis, as well as the lack of nexus between the Oswell-Ribis Email and the claims by Resorts which Morgan Stanley seeks to strike, as discussed below. In its motion, Resorts seeks attorneys' fees and expenses in connection with Resorts' response to Morgan Stanley's motion for sanctions. Morgan Stanley replied on June 8, 2007. On July 17, 2007, Resorts filed a sur-reply to which Morgan Stanley replied on July 18, 2007. Attorneys for Oswell did not

participate in this motion practice. The Court has considered all of the parties' submissions and heard oral argument on both the motion and cross-motion on July 20, 2007.

## II. DISCUSSION

### A. Sanctions under Rule 11, Fed. R. Civ. P.

Rule 11, Fed. R. Civ. P., requires that an attorney who submits a complaint certify that there is a reasonable basis in fact and law for the claims contained therein.[2] This rule "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus., 788 F.2d 151, 157 (3d Cir. 1986); Brunner v. Allied Signal, Inc.,

---

[2] Rule 11 provides, in relevant part:

**(b) Representations to Court.** By presenting to the court . . .a pleading, . . . an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... [that] . . .

    (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

    (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

**(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for their violation.

198 F.R.D. 612, 616 (D.N.J. 2001). In other words, Rule 11 requires that an attorney who submits a complaint certify that there is a reasonable basis in fact and law for the claims made in order to discourage the filing of frivolous, unsupported, or unreasonable claims. See Carlino v. Gloucester City High Sch., 57 F. Supp.2d 1, 37 (D.N.J. 1999) (citing Napier v. Thirty or More Unidentified Federal Agents, 855 F.2d 1080, 1090 (3d Cir. 1988)).

The Third Circuit Court of Appeals has held that "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir. 1991)(citations omitted); Carlino, 57 F. Supp.2d at 37. Reasonableness in the context of a Rule 11 inquiry has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact." Id.; Clement v. Public Serv. Elec. & Gas Co., 198 F.R.D. 634, 637 (D.N.J. 2001). Moreover, Rule 11 sanctions are warranted "only in the 'exceptional circumstances' where a claim or motion is patently unmeritorious or frivolous." Watson v. City of Salem, 934 F. Supp. 643, 662 (D.N.J. 1995)(citing Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988)).

9

B.  **Morgan Stanley's Motion for Sanctions**

Morgan Stanley makes two arguments in support of its motion. First, Morgan Stanley contends that, by asserting and maintaining allegations despite clear evidence of their factual falsity, Resorts has violated Rule 11 in two ways. According to Morgan Stanley, Resorts violated Rule 11 by either (a) failing to conduct pre-suit investigations before filing suit or (b) ignoring "irrefutable evidence" (i.e., the Oswell-Ribis Email) that Oswell did not fail to disclose to Resorts the opportunity to purchase the Property. According to Morgan Stanley, a simple email search of either Oswell's or Ribis' work email would have revealed the Oswell-Ribis Email demonstrating Oswell's disclosure of the opportunity to purchase the Property and Ribis' indication that Resorts had "no interest" in purchasing the Property. According to Morgan Stanley, such basic due diligence would have revealed that there is no factual basis for Resorts' claims sounding in breach of fiduciary duty.

Second, Morgan Stanley contends that Resorts compounded this violation by refusing to withdraw or amend the allegations once Morgan Stanley brought the Oswell-Ribis Email to its attention. Such a failure to withdraw or amend is sanctionable under Rule 11, according to Morgan Stanley, as "the contents of [court filings] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the

10

court and advocating positions contained in those pleadings and motions after learning that they cease to have merit." Fed. R. Civ. P. 11(b) adv. cmte. notes; 5A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1335 (1998) (Rule 11 creates "something in the nature of a continuing duty on the part of the signer to monitor the accuracy of the content of the signed document submitted to the court.") Thus, after being presented with the Oswell-Ribis Email -- which was not simply a "one-off" communication but rather one communication of several in which Oswell presented the opportunity to purchase the Property to Ribis and Resorts -- Resorts should have amended the Complaint to eliminate certain allegations.[3]

Resorts, in its opposition, first contends that Morgan Stanley's motion consistently and incorrectly assumes that the "Opportunity" referred to in Resorts' Complaint refers to the opportunity to purchase the Property rather than the "potentially

---

[3] At oral argument, counsel for Morgan Stanley elaborated on arguments made in its motion papers, clarifying that the thrust of its sanctions motion is for this Court to strike the demand for the constructive trust and that Morgan Stanley <u>does</u> <u>not</u> seek to dismiss Resorts' entire case based on the Oswell-Ribis Email. According to Morgan Stanley, the purpose of Resorts' demand for constructive trust is to hold up Morgan Stanley's acquisition and development of the Property. Morgan Stanley also claims that Resorts has no basis for a constructive trust because no basis for claiming that it lost the development opportunity. At best, such an argument is premature. Morgan Stanley has not sought, much less obtained, summary judgment against Resorts' constructive trust claim. A Rule 11 motion is seldom the proper crucible for adjudicating underlying claims that have not been subjected to dispositive motion practice or trial.

11

lucrative opportunity to develop the Property as a casino" which is how the "Opportunity" is defined within the Complaint. (Compl. ¶ 12.) According to Resorts, Oswell did not present to Resorts the opportunity to develop the Property into a casino, only the more limited "opportunity" to purchase the land.

Second, Resorts argues that the Oswell-Ribis Email actually confirms the challenged portions of the Complaint (i.e., the corporate opportunity claims of breach of fiduciary duty and unjust enrichment). Specifically, the Oswell-Ribis Email fails to make reference to the other information she had regarding the opportunity such as (i) any insight as to why she believed there was "potentially lucrative opportunity to develop the Property into a casino;" (ii) the numerous communications Oswell had with the Property's owner and all non-public information that gave her an "inside track" that allowed her to "gain a commercial advantage" in acquiring the Property for her own benefit and the benefit of Morgan Stanley; and (iii) certain other information about a potential opportunity with Morgan Stanley. According to Resorts, this was "critical information concerning the Opportunity that [Oswell] was obligated, but failed, to disclose to Resorts in the [Oswell-Ribis Email]."[4] (Pl.'s Opp. Br. at 6.)

---

[4] Resorts also argues that Morgan Stanley's request to strike Resorts' request for a constructive trust and disgorgement of profits is "patently frivolous" because these demands do not depend at all on whether Oswell presented the opportunity to Resorts or whether Resorts rejected it. (Id. at 10.) The request to strike is argued not to be appropriate because the

In a July 17, 2007 letter brief, Resorts adds additional support to their position, pointing out that even when faced with the Oswell-Ribis Email during preliminary negotiations with Oswell, Morgan Stanley itself was concerned that it did not alleviate the risk that Morgan Stanley would be sued for contributing to Oswell's breach of fiduciary duty. Resorts cites Morgan Stanley's outside counsel's communications with Oswell's counsel in which Morgan Stanley took this very position. Thus, according to Resorts, Morgan Stanley cannot now claim that Resorts' claims of breach of fiduciary duty are frivolous and without a factual basis if they themselves were concerned about such claims even when presented with the Oswell-Ribis Email.[5]

The Court will deny Morgan Stanley's motion. The Court agrees that Morgan Stanley's motion mis-characterizes the Opportunity as referring only to the purchase of a parcel of land

---

issue of whether Resorts was presented with the opportunity to purchase the Property is not an element of either Resorts' breach of fiduciary duty, aiding and abetting or unjust enrichment claims. Thus, even if the opportunity to purchase was presented to (and rejected by) Resorts, Oswell would still be bound by her contractual and fiduciary duties to Resorts.

[5] Morgan Stanley replied on July 18, 2007 arguing that Resorts materially mis-characterized the comments of Morgan Stanley's outside attorneys. Rather than stating that a lawsuit from Resorts would not be frivolous, all Morgan Stanley advised was that there were numerous legal impediments to any legal relationship between Morgan Stanley and Oswell. In fact, Morgan Stanley's attorneys advised caution and predicted vulnerability to such claims by Resorts, while Oswell's attorneys attempted to persuade Morgan Stanley that it would not be vulnerable to such claims by Resorts.

rather than a "potentially lucrative opportunity to develop the property as a casino" which is how "Opportunity" is defined in the Complaint. Thus, Oswell only presented Resorts with a portion of the corporate opportunity that is subject to the Complaint - the more limited opportunity involving only the purchase of the Property. Each of the challenged paragraphs that Morgan Stanley seeks to have Resorts withdraw (Compl. ¶¶ 13, 16, 23, 27, 45, 50 and 56) refer to the larger opportunity to develop the Property as a casino. Consequently, from the plain language of the Complaint, it appears that Resorts is claiming something different than simply presentation of a land-purchase deal.

Second, the Court agrees with Resorts that the Oswell-Ribis Email does not necessarily make Resorts' corporate opportunity claims (Counts I through III) false, requiring that they be withdrawn. On its face, the Oswell-Ribis Email weakens Resorts' claim that it would have been interested in developing the Property. But in the larger context, the Oswell-Ribis Email raises questions regarding whether Oswell disclosed all that her fiduciary duty as CEO of Resorts requires. First, the disclosure was not entirely accurate. Oswell identified the Property as a 16-acre parcel when it is really a 20-acre parcel. Oswell stated that the asking price was between $55 and $75 million dollars when her negotiating efforts reflect a price between $65 and $75 million. Third, there was a deliberate understatement of how

Oswell came to possess this knowledge, as her email said she had merely received a telephone call when in fact she had been involved in several months of dialog with Morgan Stanley and with the Property's owner about the prospects of acquisition and development and her prominent role in such efforts. Certainly, with respect to Resorts' breach of fiduciary duty claims, these inaccuracies may turn out to be immaterial, but that question should not be decided on a motion for sanctions.

More importantly, however, is what is absent from the Oswell-Ribis Email. Oswell left out critical information about the Opportunity, including the fact that she possessed non-public information that she considered valuable enough to give her the inside track and a commercial advantage. Oswell also left out the fact that, on acquiring the Property, she had made headway in negotiating a purchase price and had a relationship with the owners of the property. Last, she failed to mention that she had certain information about the opportunity to develop the property with Morgan Stanley.[6]

Resorts' position that the Oswell-Ribis Email is not fatal to their claims for breach of her fiduciary duty or unjust

---

[6] In its reply brief, Morgan Stanley states that Oswell had no duty to disclose any opportunity other than the land-purchase opportunity. Such a proposition is doubtful if Oswell, while CEO of Resorts, attempted to assist a potential competitor to develop a casino in which she would become an owner and/or officer. The Court considers this question to be more appropriately considered on a motion for summary judgment when the parameters of Oswell's fiduciary duties as CEO will be before the Court.

15

enrichment is buttressed by the advice of Morgan Stanley's own outside counsel who, even after reviewing the Oswell-Ribis Email, opined to Oswell's counsel that Morgan Stanley could not discuss the Property or potential employment with Oswell without risk of becoming "embroiled in litigation with Resorts" in which Morgan Stanley "was not likely to prevail on a motion to dismiss." (Morgan Stanley's Second Amended Responses to Resorts International Hotel, Inc.'s First Set of Interrogatories at 12.) Thus, Morgan Stanley's own attorneys, even after reviewing the Oswell-Ribis Email, noted that such litigation with Resorts could include "various claims of aiding and abetting" Oswell's breach of fiduciary duty to Resorts - which is one of the claims Resorts now asserts in this action.

Given the high standard for imposing sanctions under Rule 11, Fed. R. Civ. P. -- namely, that sanctions are only warranted in exceptional circumstances where a claim or motion is patently unmeritorious or frivolous, see <u>Watson</u>, 934 F. Supp. at 662 -- the Court cannot grant Morgan Stanley's motion. Given the limited disclosure Oswell made in the Oswell-Ribis Email (i.e., limited opportunity to purchase land parcel rather than the more expansive opportunity to develop a casino on the Property), the Court cannot say that Resorts acted unreasonably in bringing the breach of opportunity claims contained in the Complaint against Morgan Stanley.

### C. Resorts' Cross-Motion for Rule 11 Sanctions

Plaintiff Resorts argues that Morgan Stanley has failed to make even a plausible stab at meeting the standard for Rule 11 sanction, i.e., that a plaintiff's claims is "patently unmeritorious or frivolous." According to Resorts, the central argument of Morgan Stanley's Rule 11 motion -- that the allegations at the heart of Resorts' lawsuit have been proven false by the Oswell-Ribis Email -- is frivolous because Morgan Stanley actually requests that the Court strike certain counts in the Complaint that do not depend of the factual allegations that Morgan Stanley says are false. Rather, according to Resorts, the first three counts of the Complaint (for restitution due to Oswell's breach of fiduciary duty, aiding and abetting breach of fiduciary duty and unjust enrichment) are independent of the issue of whether Oswell presented the opportunity to Resorts. In support of its motion, Resorts cites an Advisory Committee Note accompanying the 1993 amendment to Rule 11 which states that "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11, adv. cmte. notes (1993). Resorts argues that this is the case here as the "deficiencies of [Morgan Stanley's] motion

are . . . glaring" and that Morgan Stanley was warned three times that such a motion for sanctions was frivolous.[7]

In response, Morgan Stanley argues that Resorts' cross-motion is frivolous and "smacks of bad faith." (Def.'s Reply at 14.) First, according to Morgan Stanley, Resorts remains unable to explain how core allegations of its Complaint can be maintained in good faith. Second, Morgan Stanley contends that Resorts failed to explain why it was asserting that Morgan Stanley's motion was "frivolous." Because Resorts was unwilling to provide a substantive response prior to filing, Resorts' demand for fees is "indefensible," according to Morgan Stanley.

As with Morgan Stanley's motion, the Court will deny Resorts' cross-motion. As discussed supra, this Court is restrained to impose Rule 11 sanctions only in exceptional circumstances and when a party has submitted a motion that is patently frivolous or unmeritorious. Here, the Court does not agree with Resorts that Morgan Stanley's contention -- i.e., that the allegations at the heart of Resorts' lawsuit have been proven false by the Oswell-Ribis Email -- is frivolous. To be sure, the Court interprets the motivation behind Morgan Stanley's motion

---

[7] Resorts also mentions that, under the 1993 revision to Rule 11, Resorts is not required to serve a full blown motion under the Rule, to obtain its fees and expenses of opposing a Rule 11 motion that itself violates the Rule. Fed. R. Civ. P. 11(c)(1)(A)("If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.")

for sanctions to (1) Morgan Stanley's more narrow view of Oswell's fiduciary duty as the CEO of Resorts to present Resorts with a corporate opportunity, (2) Morgan Stanley's interpretation of the term Opportunity in the Complaint as referring only to the opportunity to purchase the Property and not to develop it into a casino, and (3) Morgan Stanley's view that Resorts' demand for a constructive trust, an unusual remedy, as overreaching. While the Court may not agree with Morgan Stanley's interpretation of certain terms in the Complaint or its view of the significance of the Oswell-Ribis Email, they are certainly plausible under the circumstances. Resorts will eventually be required to bear the burden of demonstrating that it would have been inclined toward this development opportunity if it had been aware of it, a task that will be impeded by Ribis' disinclination to explore purchasing the property. In addition, because Resorts failed to provide a substantive response prior to filing its motion (and after Morgan Stanley made a number of attempts to discuss the matter), it would be inequitable for this Court to sanction Morgan Stanley for bringing the original sanctions motion. Although counsel for Resorts orally argued that Resorts will demonstrate that it would have undertaken this development opportunity, no such evidence has been presented and deposition testimony of Resorts' decision-makers has not yet been given; thus, it remains to be seen whether evidence backs Resorts' claim

professing interest in the development opportunity, and this Court cannot presume, in this Rule 11 cross-motion, that Resorts' evidence of its then-existing intention to develop the Property will render Morgan Stanley's Rule 11 motion to be frivolous. Consequently, finding that Morgan Stanley's motion for sanctions is not frivolous, the Court will deny Resorts' cross-motion.

### III. CONCLUSION

These cross-motions demonstrate that Rule 11 is not the appropriate vehicle for addressing claims that have not yet been adjudicated on the merits.  Without the benefit, and the procedural safeguards, of summary judgment motion practice addressing Resorts' claims under applicable law, the Court cannot say that the disputed claims are so unreasonable that sanction should follow.  Similarly, since it is conceivable that Morgan Stanley will defeat Resorts' claim for constructive trust, and that the Oswell-Ribis Email could play an important role in undermining Resorts' professed interest in the Property, the Court cannot conclude that Morgan Stanley's Rule 11 motion was unreasonably filed.  Accordingly, this Court will (1) deny Morgan Stanley's motion for sanctions under Fed. R. Civ. P. 11 and (2) deny Restorts' cross-motion for sanctions.  The accompanying Order is entered.

**September 6, 2007**  
Date

**s/ Jerome B. Simandle**  
JEROME B. SIMANDLE  
United States District Judge